IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARTIN GRIEGO**,

        Plaintiff,

v.                                                     No. CIV 09-599 BB/ACT

**NEW MEXICO STATE POLICE, and
OFFICERS JOEL GONZALEZ, DOMINIC
LUCERO, and ARTHUR CRUZ, in their
official and individual capacities,**

        Defendants.

**MEMORANDUM OPINION AND ORDER**

        This matter is before the Court for consideration of Defendants' motion to dismiss the state-law claims raised by Plaintiff (Doc. 25). After considering the submissions of the parties and the applicable law, the Court will grant the motion in part and deny it in part.

        **Background**

        Plaintiff filed this lawsuit alleging he was being harassed by certain New Mexico State Police officers due to his employment with the New Mexico public defender's office in Taos, New Mexico. Plaintiff's complaint alleges federal claims brought pursuant to 42 U.S.C. § 1983, which are not at issue at this point. The complaint also alleged several state-law claims under the New Mexico Tort Claims Act, NMSA §41-4-1 *et seq*. Defendants have moved to dismiss all of these state-law claims, arguing the claims are not cognizable under the Tort Claims Act ("TCA") as they are pled in the complaint. Defendants have directed a number of different arguments against the various claims raised by Plaintiff; as discussed below, some of these arguments have merit, while others do not.

**Standard of Review**

In deciding a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. *See id.* A plaintiff does not have to provide detailed facts but the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

**Discussion**

**Procedural Issue Raised By Plaintiff:** Plaintiff argues the Court should not consider the motion to dismiss, because it was filed after Defendants had already answered the complaint and is denominated as a Rule 12(b)(6) motion. This argument is without merit. According to F.R.C.P. 12(h)(2), the defense of failure to state a claim cannot be waived; it may be raised before trial by way of a motion for judgment on the pleadings, and can even be raised at trial. *See Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 611 (6th Cir. 1995). The fact that Defendants referred to their motion as a Rule 12(b)(6) motion is immaterial; although such motions are properly made before an answer is filed, the Court will look to the substance of the motion and treat it as a motion for judgment on the pleadings.

**Failure to Give Notice Prior to Filing Suit:** The TCA contains a provision stating that every person "who claims damages from the state or any local public body" must provide a written notice of such claim within ninety days of the occurrence giving rise to the claim. NMSA § 41-4-16(A). If the required notice is not given, no lawsuit may be maintained against the state or local public body unless that entity had actual notice of the occurrence. § 41-4-16(B). The governmental

Defendant in this case, the Department of Public Safety ("DPS")[1], argues that Plaintiff failed to provide such written notice prior to filing suit, and contends the TCA claims brought against it must therefore be dismissed.[2] Plaintiff responds by pointing out that he filed this lawsuit within ninety days of the last act of harassment about which he is complaining. He contends the filing of the complaint gave timely actual notice of the occurrence to DPS, and maintains he has therefore complied with the notice provision of the TCA. The essential question with respect to this issue, therefore, is whether the filing of the lawsuit in this case is legally sufficient to constitute actual notice under the TCA, and therefore satisfies § 41-4-16(B).

Defendants maintain the filing of a lawsuit, even within the ninety-day notice period established by § 41-4-16(B), as a matter of law cannot be considered actual notice of the occurrence upon which the lawsuit is based. In support of this assertion, Defendants cite several cases from states other than New Mexico. *See, e.g., Cliett v. City of Ocean City*, 2007 WL 2459446(D.N.J. 2007, unpublished); *Kantz v. Elkhart County Highway Dep't*, 701 N.E.2d 608, 615 (Ind. App. 1998). As Plaintiff points out in response, however, none of the state statutes discussed in Defendants' authorities contain an actual-notice exception similar to New Mexico's. Furthermore, although Plaintiff was either unable to locate contrary authority or for some reason did not reveal it, the Court's own research has revealed that Defendant's argument and authorities do not reflect a majority position. There are cases from at least two states disagreeing with Defendants' proposition and holding that the filing of a complaint in a timely manner can indeed constitute the notice

---

[1] The complaint names the agency Defendant as the New Mexico State Police, but as Defendants point out the actual name of the agency is the DPS, while the State Police department is merely one division of the DPS. NMSA § 9-19-4.

[2] Defendants have properly limited the scope of this argument to the agency Defendant, DPS, as the notice requirement does not apply to claims brought against individual governmental employees. *See, e.g., Dutton v. McKinley County Bd. of Comm'rs*, 822 P.2d 1134, 1136 (N.M. App. 1991). Plaintiff's TCA claims against the individual officer Defendants, therefore, are unaffected by this issue.

required by that state's tort claims statute. *See Diemert v. City of Mobile*, 474 So.2d 663, 665 (Ala. 1985) (the "better rule" is that if a suit on a claim against a city is commenced within the six-month period prescribed by statute, the notice-of-claim requirement has been met); *Dunbar v. Reiser*, 356 N.E.2d 89 (Ill. 1976) (filing of complaint within requisite six-month period "accomplished the statutory purpose to furnish timely notice of injury so that there can be an investigation and a prompt settlement of meritorious claims"). Thus, the states that have addressed the issue appear to be split, and there is no clear weight of authority.

It should be noted that none of the cases cited above were decided in jurisdictions, such as New Mexico, which allow actual notice to substitute for the written notice demanded by statute. Neither Defendants nor Plaintiff have cited any authority from such a jurisdiction, which is not surprising since only a small minority of states appear to have enacted an actual-notice exception to the written-notice requirement. One state which has done so is Texas. Unfortunately, that state's appellate courts have come down on both sides of the lawsuit-as-actual-notice question. In *Cavazos v. City of Mission*, 797 S.W.2d 268, 271 (Tex. App. 1990), the court held that where a lawsuit is filed within the statutory six-month notice-of-claim period, a fact issue is raised as to whether the defendant city had timely actual notice of the claim. Subsequently, another division of the Texas court of appeals disagreed with *Cavazos*, holding that "the notice prerequisite may not be satisfied by notice that comes as a result of the lawsuit being filed." *Brazoria County v. Colquitt*, 282 S.W.3d 582, 587 (Tex. App. 2009). The *Brazoria* court based its refusal to follow *Cavazos* on the fact that a number of years after *Cavazos* was decided, Texas amended its government code to include a provision emphasizing that statutory prerequisites to suit, including the provision of notice, are jurisdictional requirements. *Id.* p. 586. New Mexico, it should be noted, has no such statutory provision.

One other state that has enacted an actual-notice exception is Wisconsin, which requires written notice unless the public-agency defendant had actual notice of the circumstances of the

claim, and the plaintiff can show the defendant was not prejudiced by the plaintiff's failure to provide written notice. Wis. Stat. § 893.80(1)(a). The only case the Court has located from that jurisdiction that is even tangentially on point comes from the Seventh Circuit, applying Wisconsin law. *See Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 911 (7th Cir. 1985). In *Orthmann*, Judge Posner opined that a prior lawsuit filed by the plaintiff "gave the village actual notice of Orthmann's claim." *Id.* Thus, according to Judge Posner, the filing of a complaint can constitute the actual notice of a claim contemplated by the statute. *Orthmann*, however, is of marginal utility to the Court in this case, because Judge Posner was referring to a prior lawsuit rather than the currently-pending one. In other words, he did not address the issue of whether actual notice of a claim can be provided by filing the very lawsuit that seeks to prosecute the claim, as Plaintiff argues has been accomplished in this case.

The Court also finds it necessary to point out one major difference between the New Mexico provision and the notice requirements applied in *Cliett* and *Kantz*, *supra*, the New Jersey and Indiana cases relied on by Defendants. Both in New Jersey and in Indiana, providing timely written notice of a claim is not the only requirement that must be met before a would-be litigant can file suit against a public entity. In New Jersey, a plaintiff must wait six months after filing a notice of claim with the appropriate agency, and only then may the plaintiff file suit. *See* N.J. Stat. Ann. 59:8-8. Presumably, the purpose of this six-month waiting period is to provide an opportunity for the agency in question to decide whether to pay the claim that has been submitted. Similarly, in Indiana, a plaintiff is expressly precluded by statute from filing suit against a governmental entity unless the plaintiff has earlier filed a notice of claim within 180 days after the loss in question, and that claim has been denied in whole or in part. *See* Ind. Code § 34-4-16.5-7; § 34-4-16.5-12. The *Kantz* opinion stated that the plaintiff's failure to provide notice of his claim prior to filing suit deprived the county of an opportunity to approve or deny the plaintiff's claim, and accordingly held that filing suit within the 180-day notice period was not sufficient to comply with the notice provisions of

Indiana's tort claims act. 701 N.E.2d at 615-16. New Mexico's TCA, on the other hand, has no similar requirement mandating that a public entity be afforded an opportunity to act on a claim before a lawsuit is filed against that entity. In New Mexico, therefore, it seems a plaintiff could submit a written notice and file a lawsuit on the same day, without violating § 41-4-16 of the TCA.

As is apparent from the above discussion, the Court is confronted with a question as to which there is no controlling authority or even any established position based on analogous statutes in other jurisdictions. The answer to the question must therefore be determined by examining New Mexico's notice provision and the purposes for which it was enacted.[3]

Given the absence of a wait-for-a-response-to-the-claim provision in the TCA, it is apparent the purposes of the TCA's notice provision, unlike those of New Jersey and Indiana, do not include affording the public entity an opportunity to act on the claim before legal action is initiated. Instead, the purposes of § 41-4-16 are as follows: (1) to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit; (2) to allow the governmental entity or its insurer to investigate the facts underlying an incident while they are still fresh and to question witnesses; and (3) to allow the public entity to protect itself against false or exaggerated claims while also permitting it to identify and settle meritorious claims. *See Lopez v. State*, 930 P.2d 146, 149 (N.M. 1996). The notice provision thus emphasizes the requirement that the governmental entity be notified of the occurrence quickly, within ninety days, to allow an effective investigation to take place. This quick-

---

[3]The Court has considered the possibility of certifying this question to the New Mexico Supreme Court for a definitive answer. However, the Court is disinclined to do so, for two reasons. First, this does not appear to be an issue that will recur often – given New Mexico's short notice period of ninety days, it is unlikely that many tort-claims lawsuits will be filed, as was this one, within that notice period. The question of whether a lawsuit itself can constitute actual notice under the TCA will therefore not likely arise in many other cases. In addition, in this case it appears to make little practical difference whether DPS remains in the case as a Defendant or is dismissed as a party. The individual Defendants will remain in the case, and Plaintiff can be fully compensated for his damages if he successfully imposes liability on those individual Defendants. There seems to be little reason, therefore, to delay this case and at the same time add to the New Mexico Supreme Court's busy caseload with a certification request.

notification requirement applies whether the notice is provided by a written notice of claim or by the actual knowledge of the public entity. *See Smith v. State*, 743 P.2d 124, 127 (N.M. App. 1987) (actual notice excuses lack of written notice only if the particular agency that caused the alleged harm is notified within ninety days after the occurrence that it may be subject to a lawsuit).

The purposes of the TCA's notice provision are satisfied where, as here, a lawsuit is filed and the complaint is served within ninety days of the occurrence in question.[4] Obviously, the mere fact that a complaint has been filed gives notice to the public entity that it is subject to a lawsuit. In addition, since the complaint has been filed within ninety days of the occurrence giving rise to the lawsuit, the public entity will be able to conduct its investigation while the facts are still fresh and the memories of any witnesses have not faded. Finally, filing a complaint within ninety days provides the same amount of protection against false or exaggerated claims, and the same opportunity to settle meritorious ones, as does submitting a written notice within ninety days. It is true that filing a lawsuit puts the public entity under a time schedule to file a timely answer, adding some level of urgency to its investigation; however, that would also be true if the written notice were submitted and a lawsuit filed simultaneously or shortly thereafter, as the TCA allows. Again, it must be emphasized that nowhere in the TCA is there evidence of a purpose to provide a governmental entity some period of time in which to consider a claim before the entity faces a lawsuit. Instead, the purpose of the TCA's requirement is timely notification that spurs an investigation, and allowing a complaint to provide such notification satisfies that purpose. *See Dunbar v. Reiser, supra*, 356

---

[4]The requirement of service within ninety days is important because merely filing a complaint provides no notice whatsoever to the opposing party. It is not until the complaint is served that the governmental entity will be notified there is a claim against it, and will be informed of the alleged facts forming the basis of that claim. In this case, the service requirement is not at issue. The last incident about which Plaintiff complains occurred on April 3, 2009; this lawsuit was filed in May 2009; and Defendants were served with the complaint at the latest by June 18, 2009, the date the petition for removal was filed in this Court. The Court expresses no opinion at this time as to whether Plaintiff's state-law claims against DPS will be limited to the April 3, 2009 incident. It is sufficient to hold that as to at least one of the incidents alleged in the complaint, service of the complaint was accomplished within ninety days of April 3, 2009.

N.E.2d at 91 (filing a complaint within six months satisfies the statutory purpose of allowing an effective investigation and prompt settlement of meritorious claims).[5]  The complaint that was filed and served in this case, within ninety days of April 3, 2009, provided legally-sufficient actual notice of the claimed occurrence and of Plaintiff's claim against DPS. For that reason, the motion to dismiss the state-law claims against DPS will be denied.

**False Arrest Claim:** Defendants argue the state-law false-arrest claim raised in the complaint must be dismissed because the only detention alleged in the complaint is a traffic stop. According to Defendants, a traffic stop does not constitute either an actual arrest or a de facto arrest, and without an arrest there can be no claim for false arrest.  In response, Plaintiff again cites no authority, but simply states that a false arrest "occurs when one person intentionally confines another without lawful authority."  According to Plaintiff, therefore, a traffic stop performed without reasonable suspicion is a false arrest because there has been an intentional confinement without lawful authority.[6]

The law concerning false-arrest claims is actually quite a bit more muddled than either party's portrayal of that law would suggest.  Some courts have held that an arrest, either de facto or actual, is necessary to support a claim for false arrest. *See, e.g., Lucas v. City of Boston*, 2009 WL 1844288 (D. Mass. unpublished) (doubtful whether brief detention of plaintiff in handcuffs could be accurately characterized as an "arrest", which is an element of a false-arrest claim); *Bissinger v. City of New York*, 2007 WL 2826756 (S.D. N.Y. unpublished) ("A claim for false arrest must be

---

[5]The Court notes that under certain circumstances, a public entity's receipt of a police report can provide actual notice of a claim meeting the requirements of § 41-4-16. *See Lopez, supra.* If a police report can do so, the Court sees no reason why a timely-filed-and-served complaint cannot accomplish the same purpose even more effectively.

[6]Plaintiff's complaint does allege another detention, which he calls a custodial interrogation occurring after a vehicle accident in October 2008.  Plaintiff did not file his lawsuit within ninety days of this incident, or provide any other type of notice sufficient under the TCA; therefore he cannot raise a state-law claim of false arrest with respect to this incident.  *See* discussion in preceding section.

premised on an actual arrest.").[7]  Other courts have rejected this proposition and held that any unlawful detention, even one not rising to the level of an arrest, can support a claim for false arrest. *See, e.g., Vasquez v. Pampena*, 2009 WL 1373591 (E.D. N.Y. unpublished) (discussing and rejecting the holding in *Bissinger* as well as other cases requiring an actual or de facto arrest as an element of a false-arrest claim); *see also Jones v. Cannon*, 174 F.3d 1271, 1292 (11th Cir. 1999) (describing a traffic stop as a "traffic arrest" sufficient to support a claim for false arrest).

     The confused state of the law on this issue can perhaps be explained by the fact that the majority of false-arrest cases involve an official arrest, including taking the subject into custody, and do not raise an issue of the level of official coercion required to support a false-arrest claim. Also, in some jurisdictions, the torts of false imprisonment and false arrest are essentially the same, with identical elements. *See* 32 Am.Jur.2d, False Imprisonment § 3. False imprisonment requires only an unlawful confinement or detention, rather than an actual or de facto arrest; therefore, jurisdictions equating the two would certainly find that a false "arrest" need not in reality involve a full-blown arrest. *See, e.g., Green v. Donroe*, 440 A.2d 973, 974 (Conn. 1982) (equating false imprisonment and false arrest, and stating that any period of unlawful restraint of a person, however brief in duration, is sufficient to give rise to liability). New Mexico courts have not delved into the distinction between false arrest and false imprisonment, if indeed there is one, although the Court of Appeals recently noted that a "false arrest is merely one way of committing false imprisonment." *Santillo v. New Mexico Dep't of Pub. Safety*, 173 P.3d 6, 10 (N.M. App. 2007).

     In any event, it is not necessary to attempt to determine the contours of the false-arrest tort in New Mexico. Plaintiff has alleged he was subjected to a traffic stop without lawful authority; such a stop, if it occurred, constitutes an unlawful, intentional confinement or restraint of a person.

---

[7]This Court subscribed to that view in a recent case, *St. John v. McColley*, 653 F.Supp.2d 1155, 1165 (D. N.M. 2009), stating that "[w]ithout an arrest, there can be no viable claim for false arrest." It must be noted however, that *St. John* involved a much less obtrusive detention than the stop of a vehicle.

This is a sufficient allegation to state a claim for false imprisonment. *See Santillo* (tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so); *see also Lucas v. City of Boston, supra*, 2009 WL 1844288 (although brief detention was most likely not an arrest, it was sufficient to state a claim for false imprisonment). The fact that Plaintiff has characterized his claim as one for false arrest does not matter; the Court examines the facts alleged by Plaintiff, not the legal theory advanced in the complaint. *See Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994) (district court erred by dismissing complaint alleging RICO claim, where facts alleged would support claims for fraud and conversion); *Doss v. South Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory). The Court will treat Plaintiff's claim as one for false imprisonment rather than false arrest, and thus avoid all issues as to whether a de facto arrest occurred or not, or is even necessary to support a false-arrest claim. On that basis, Defendants' attempt to dismiss this claim will be denied.

**Other State-Law Claims, Excluding Negligence:** Defendants argue that Plaintiff's claims for private nuisance, bad faith, punitive damages, and civil conspiracy must be dismissed because the TCA does not waive immunity for these torts. Defendants point out that NMSA § 41-4-12, waiving immunity for certain wrongs committed by law enforcement officers, contains no mention of any of the foregoing claims. Plaintiff responds by arguing that where an officer's commission of one type of tort causes the occurrence of a wrong specifically delineated in § 41-4-12, immunity is waived under the TCA. *See generally Ortiz v. New Mexico State Police*, 814 P.2d 117, 119 (N.M. App. 1991) (where negligence by a law enforcement officer causes the commission of one of the specific torts mentioned in § 41-4-12, immunity has been waived for that negligence). For the reasons discussed below, none of these "torts" will be allowed to proceed as separate, stand-alone claims.

The Court first notes that punitive damages are not allowed under the TCA. *See* NMSA § 41-4-19(D) (2007). Even if a claim for punitive damages could be considered a stand-alone claim, rather than a form of damages, Plaintiff would not be able to pursue such a claim under the TCA. Similarly, there is no such thing as a stand-alone claim for "bad faith" except in the insurance context. *See, e.g., Public Serv. Co. of New Mexico v. Diamond D Const. Co., Inc.*, 33 P.3d 651, 668 (N.M. App. 2001) (discussing bad faith as a cause of action against an insurer and as a mental state supporting an award of punitive damages). In this case, the Court will assume the allegation of bad faith is simply a characterization of the mental state with which Defendants allegedly committed the underlying torts or constitutional violations claimed by Plaintiff. Thus, no separate claim for "bad faith" will be allowed in this case, although Plaintiff will be allowed to demonstrate, if he can, that Defendants acted in bad faith, for purposes of his § 1983 claims.

The same type of analysis also applies to Plaintiff's claim for civil conspiracy. A civil conspiracy is not actionable by itself, and does not provide an independent basis for liability. *See Cain v. Champion Window Co. of Albuquerque, LLC*, 164 P.3d 90, 98 (N.M. App. 2007). The purpose of such a claim is to impute liability and make all members of the conspiracy jointly and severally liable for the torts of any of its members. *See Ettenson v. Burke*, 17 P.3d 440, 445 (N.M. App. 2000). Plaintiff will therefore be allowed to attempt to demonstrate that a civil conspiracy existed, not as a separate, stand-alone claim but as a means of imposing joint and several liability on Defendants.

As to Plaintiff's claim for private nuisance, it is true that such a separate, stand-alone tort does exist in New Mexico. However, the tort is entirely inapplicable to the allegations made in Plaintiff's complaint. In New Mexico a private nuisance is "an unreasonable interference with the private use and enjoyment of land." *City of Sunland Park v. Harris News, Inc.*, 124 P.3d 566, 577 (N.M. App. 2005). Plaintiff's allegations have nothing to do with an interference with his private use and enjoyment of land. Therefore, this claim will be dismissed.

**Negligence Claim:** Defendants concede that if a law enforcement officer's negligence causes a third party to commit assault, battery, or any of the other enumerated torts and wrongs listed in § 41-4-12, the TCA waives immunity for that negligence. *See Ortiz, supra*. Defendants argue, however, that Plaintiff's allegations of negligence are entirely conclusory and therefore fail to state a claim. Plaintiff contends he has satisfactorily alleged negligent failure to supervise, as well as negligent hiring, and should be allowed to conduct discovery to attempt to flesh out these claims. He points out that if negligent actions by a law enforcement officer cause the deprivation of a constitutional right, such negligence is actionable under the TCA. *See Ortiz, supra,* 814 P.2d at 119 (complaint adequately stated claim under TCA by alleging that negligent supervision or training caused commission of assault, battery, false arrest, and malicious prosecution, four torts listed in § 41-4-12).

It must be noted, first, that there is no mention of negligent hiring anywhere in the complaint. The Court has reviewed all 168 numbered paragraphs of the complaint containing allegations of fact, and there is no factual allegation concerning the hiring of any of the individual Defendants. Plaintiff's argument that he has sufficiently alleged negligent hiring, therefore, is not correct, and the issue of negligent hiring will not be part of this case.[8]

The complaint does contain an allegation of negligent supervision, couched in completely conclusory terms: DPS "has been negligent in its supervision of the Police Officers and has failed to create a system which would prevent harassment of a private citizen for personal motivations." [Complaint, par. 143] If this were a "normal" case involving an independent claim for negligent supervision of employees, such a generalized, conclusory allegation would not suffice to state a claim. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (complaint containing only labels and

---

[8]Of course, if discovery leads to evidence providing a sufficient factual basis to show the existence of negligent hiring, and that such negligent hiring led to one of the actionable claims set out in § 41-4-12, Plaintiff will be allowed to amend his complaint accordingly.

conclusions "will not do."). This is so even though a court considering a motion to dismiss must accept as true all of the allegations contained in a complaint, because that tenet "is inapplicable to legal conclusions." *Id.* In other words, a court need not accept as true a legal conclusion couched as a factual allegation. *Id.*, pp. 1949-50. There is no factual allegation in Plaintiff's statement; it merely offers conclusions that negligent supervision occurred, and a failure to create a "system" took place. In this case, however, the negligent-supervision allegation is not in reality a separate, stand-alone claim of negligence. Instead, it is merely one way by which Defendants are alleged to have committed violations that are actionable under § 41-4-12. If Plaintiff can prove the individual Defendants were negligently supervised and this negligent supervision caused the commission of false imprisonment or some other violation of Plaintiff's constitutional rights, he will be entitled to recover not for the negligent supervision but for the violation of his rights. Although it is a close call, therefore, the Court will allow Plaintiff to pursue his negligent supervision theory, at least for the present.

The same analysis applies to the only other allegation of negligence contained in the complaint. Plaintiff alleges Defendants Gonzalez and Cruz negligently assisted Defendant Lucero in his "campaign of harassment" against Plaintiff. Again, although the complaint contains no specific factual allegations concerning negligent behavior by these Defendants, the allegation that they acted negligently is sufficient, if barely, to allow Plaintiff to pursue that theory as an alternative to the theory that they acted intentionally.

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss all state-law claims against DPS will be denied. The motion to dismiss the state-law false-arrest claim will also be denied, although the claim will be denominated a false-imprisonment claim. The state-law claims for private nuisance, bad faith, and punitive damages will be dismissed, although Defendants' bad faith as well as the punitive damages issue may be relevant to Plaintiff's § 1983 claims. The motion to dismiss the

state-law claim for civil conspiracy will be granted, although Plaintiff will be allowed to prove such a conspiracy existed solely for the purpose of imposing joint and several liability upon Defendants. Finally, the motion to dismiss the state-law negligence claim will be denied, although the negligence allegations will not be treated as separate claims but as alternative ways in which Defendants might have committed acts giving rise to a cause of action valid under § 41-4-12.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion to dismiss filed by Defendants (Doc. 25) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 23rd day of February, 2009.

*Bruce D Black*

BRUCE D. BLACK
United States District Judge